IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KIM GRAY, <br> AIS #203553, <br><br> Plaintiff, <br><br> V. <br><br> PAUL WHALEY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. <br> ) 2:06-CV-107-MEF <br> ) <br> ) <br> ) <br> ) <br> ) |

**SPECIAL REPORT**

Comes now the Defendant Paul Whaley, by and through the undersigned counsel in the above-styled action, and files this Special Report as follows.

**PLAINTIFF'S AMENDED ALLEGATIONS**

The Plaintiff's complaint alleges that his constitutional rights have been violated by the Defendant pursuant to § 1983, specifically that Paul Whaley submitted an affidavit in another case that was false, and that the affidavit was libelous and slanderous.

**DEFENSES**

The Defendant alleges that he has not violated the Plaintiff's constitutional rights, and demands the strict proof thereof.

The Defendant alleges that the Plaintiff has failed to state a claim upon which relief can be granted under §1983.

The Defendant alleges that he is entitled to qualified immunity against the claims of the Plaintiff.

The Defendant alleges that he is entitled to absolute immunity against the claims of the Plaintiff.

The Defendant pleas the general defense.

The Defendant alleges that the Plaintiff has failed to state a claim upon which a 42 U.S.C. § 1983 action can be maintained.

The Defendant alleges that this Honorable Court does not have jurisdiction over the claims alleged by the Plaintiff.

The Defendant alleges that the Plaintiff has already sought relief of the claims alleged in this complaint in state court, specifically Montgomery County Circuit Court, petition for writ of certiorari, CV-04-457, therefore this action is barred by res judicata and collateral estoppel.

The Defendant alleges that the claims of the Plaintiff are barred pursuant to the Prisoner's Litigation Reform Act.

The Defendant reserves the right to amend his defenses, including additional affirmative defenses, upon the receipt of information through discovery and otherwise.

The Defendants reserves the right to file an answer and a demand for a jury trial subsequent to the Court's ruling on summary judgment.

**STATEMENT OF FACTS**

Inmate Gray filed this complaint against Paul Whaley, who is

the Director of Classification for the Alabama department of Corrections. In a state court proceeding wherein the Plaintiff was seeking the same relief as he is seeking here, the state court denied his claims. Paul Whaley's affidavit in the state court case, as it is in this case, was based upon the Pre-sentence Investigation (PSI) supplied to ADOC by the Court System.

**ARGUMENT**

First and foremost, the claims of the Plaintiff do not involved a constitutional deprivation under § 1983. The Code of Alabama § 14-1-8 (6) 1975, states as one of the functions of the Department of Corrections is to

> "promulgate such rules and regulations necessary to hygiene, sanitation, cleanliness, healthfulness, feeding of prisoners, management and security of all prisons and jails."

As such, the Department of Corrections has published rules and regulations. The publication of rules is sufficient for the purpose of due process to put the plaintiff on notice as to the rules he was required to obey. See e.g., United States v. Vasarajs, 908 F.2d. 443 (9th Cir. 1990) (Generally disgusting in a criminal context satisfaction of due process notice requirements through publication).

The courts have repeatedly recognized that the operation of a penal institution is, at best, a difficult assignment and that

penal authorities must be given broad ranging discretion and latitude in which to carry out their duties. See Hewitt v. Helms, 459 U.S. 460,103 S.Ct. 864,74 L.Ed.2d 675(1983). "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their Judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520,547, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979); Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994). The act of classifying inmates to a higher security level is within the type of "deference" that should best be left to prison officials, not judges. LaMarca v. Turner, 995 F.2d 1526, 1543 (11th Cir. 1993), cert. denied, _____ U.S. _____, 114 S.Ct. 1189, 127 L.Ed.2d, 539 (1994).

The Plaintiff contends he has been improperly classified based on false information. Such is not the case. The Supreme Court has held that prison inmates do not have a liberty interest under the Constitution with respect to their security classification. See Moody v. Daggett, 97 S.Ct. 274, 279 n. 9 (1976). Classification ordinarily is left to the sound management and discretion of prison authorities. See Jones v. United States, 534 F.2d 53 (5th Cir. 1976), cert. denied, 429 U.S. 978, 97 S.Ct. 487, 50 L.Ed. 2d 586 (1977); Young v. Wainwright, 449 F.2d 338 (5th Cir. 1971); Martin v. Tyson, 845

F.2d 1411 (7th Cir. 1988); Green v. McKaskle, 788 F.2d 1116 (5th Cir. 1986).

In Alabama, less restrictive placements, programs, and custodies are privileges, as opposed to rights and entitlements. The Department of Corrections has wide discretion in determining those inmates entitled to custody levels and at which institution. Because of this wide discretion, the law governing classification status does not mandate action. The Eleventh Circuit Court of Appeals has stated, "When a statute is framed in discretionary terms there is not a liberty interest created." Conoloque v. Shinbaum, 949 F.2d 378(11th Cir. 1991). Therefore, an inmate does not have a liberty interest in classification or custody levels. Prison inmates have no due process rights directly under the constitution to any particular classification. Also in Hewitt, the Supreme Court stated:

> "[A]s long as the condition or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the constitution; the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."459 U.S. at 468.

Similarly, in Meachum v. Fano, 427 U.S. 215, 225 the Court concluded that:

> "[T]o hold...that *any* substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial

> review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts."

427 U.S. at 225.

In the recent case of Sandin v. Conner, 115 S.Ct. 2293 (1995), the Supreme Court discussed the tendency for Courts to incorrectly "draw negative inferences from mandatory language in the text of prison regulations" and determined:

> "Such a conclusion may be entirely sensible in the ordinary task of construing a statute defining rights and remedies available to the general public. It is a good deal less sensible in the case of a prison regulation primarily designed to guide correctional officials in the administration of a prison. Not only are such regulations not designed to confer rights on inmates, but the results of the negative implication jurisprudence are not designed to confer rights on inmates, but are instead to attach procedural protections that may be of quite a different nature."

115 S.Ct. at 2299
Stating further:

> "we believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns under girding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

115 S.Ct. at 2300.

The Defendants contend that the Plaintiff's classification is not the type of "dramatic departure"

> to which the decision in <u>Sandin</u> would apply. The conditions of confinement in a more secure institution are typical of what the plaintiffs could normally expect in the service of their sentence. In addition, the duration of their confinement has not been affected by the placement in a more secure facility. See <u>Callender v. Sioux City Residential Treatment Facility</u>, 88 F. 3d 666 (8th Cir. 1996), <u>Dominque v Weld</u>, 73 F.3d 1156 (1st Cir. 1996), <u>Hamilton v. Peters,</u> 919 F.Supp. 1168 (N.D. Ill. 1996).

Notwithstanding the above argument, the Classification Director has stated that inmate Gray is not eligible for certain internal programs within the Department of Corrections due to his murder conviction.

As there are no issues of material fact and for the reasons herein stated, the Defendant pursuant to F.R.C.P. 56(b), requests that a motion for summary judgment be granted.

Respectfully submitted,

Kim T. Thomas
General Counsel
Assistant Attorney General

<u>/s/Albert S. Butler</u>
Albert S. Butler
Assistant General Counsel
Assistant Attorney General

ADDRESS OF COUNSEL:

Alabama Department of Corrections
301 South Ripley Street
Post Office Box 301501
Montgomery, Alabama 36130-1501
334-353-3885

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing documents upon :

Kim Gray, AIS #203553
Bibb Correctional Facility
565 Bibb Lane
Brent, Alabama 35034

by placing a copy of same in the U.S. Mail, properly addressed and postage paid, on this the 30th day of May, 2006.

/s/Albert S. Butler
Albert S. Butler

STATE OF ALABAMA:                     CIVIL ACTION NO. 2:06cv107.MEF

MONTGOMERY COUNTY:          GRAY, KYM #203553R

### AFFIDAVIT

    My name is Paul Whaley II and I am presently employed as the Director of Classification, Alabama Dept. of Corrections, P O Box 301501, Montgomery, Alabama 36130. I am over the age of twenty-one years. I have 27 years' experience with the Alabama Dept. of Corrections, all in the area of inmate classification. I worked at Kilby as the institutional classification specialist for five years managing a caseload as well as performing intake and reclassification duties. Following that, I served 9 ½ years as a member of the Central Review Board where the vast majority of classification determinations statewide relative to placements, programs, custodies, institutional assignments and security levels were made. I have served as the Director of Classification for 13 years. I have attended specialized training with the National Institute of Corrections. I hold Masters' degrees in both Criminal Justice and Counseling. I hold a specialized instructor's certificate (#647) issued by the Peace Officers' Standards and Training Commission. I have given presentations around this state to Circuit Judges, District Attorneys, and attorneys for CLE credit. I am qualified to testify to the following with respect to the issues raised in this pleading.

    Inmate Kym Gray #203553R is a violent criminal offender currently serving a 50 year sentence for the crime of murder.

    In his current complaint of record, inmate Gray has apparently become entirely consumed in an issue of semantics stemming from my response to his last civil action. Specifically he alleges that not only have I have defamed and slandered him with my response, but that in some manner by using his record which he alleges to be erroneous, I have denied him some "achievement" (sic) entitlement to a lesser restrictive institutional placement.

    Inmate Gray alleges I have slandered him. It is not clear he understands the term. Slander is the act of uttering a false statement intended to damage the reputation of another party. No statement was "uttered". What, however, is there to defame in any

Page 2 Gray, Kym # 203553R

murder's reputation by citing the conviction or the available details of the offense? Gray has been convicted of a very brutal act and the sentence imposed was intended not only as punishment, but to insure his removal from free society for a very long period of time. Gray is concerned as well about the term I used (to wit:" violent criminal predator") to describe him which he interprets to be false and the utilization thereof in some manner posing a "reckless disregard" for some "vain less"(sic) effort, the meaning of which is not entirely clear.

What are the facts? Inmate Gray is convicted of murder. Murder is a crime. Murder is a violent crime at that. The details of this crime are particularly egregious. Gray is therefore a violent criminal. What is a predator? Webster's New World dictionary defines it as one who plunders or preys on another. The details of this offense indicate the victim was tracked down, accosted, abducted, and then beaten to death with an ax handle (exhibit A). Those are the reported facts. I cannot change them nor ignore them merely because Gray so demands. Whether the inmate was convicted of any of the ancillary acts surrounding the murder is academic. They constitute part of the record of the offense that was furnished by the Court to the ADOC. Omit the allegation of the sexual act and still the fact the victim was taken against her will to be murdered is sufficient to restrict him from any less restrictive placement.

Inmate Gray rationalizes that his crime is neither villainous nor wicked. That is not for me to judge. The intent of his crime has been defined by the court through the nature of his conviction. He alleges that there has been an infliction upon him of emotional distress and mental injuries. The only person who suffered any emotional, mental, or physical pain was the victim who was forced to give up her life by being beaten with an ax handle that day to ease inmate Gray's personal angst, a victim for whom Gray exhibits not the first iota of concern, compassion, or remorse. Inmate Gray is a convicted murderer and the details of his act are a matter of record. He may not be able to bear the realities of his crime, but that is a personal problem rather than some matter that will require either society or the ADOC to walk on eggshells to insure that inmate Gray's delicate sense of self is not further upset.

Page 3 Gray, Kym #203553R

All less restrictive placements, programs, and custodies offered by the ADOC are privileges to which no offender enjoys any right or entitlement of consideration, let alone participation. No convicted murderer is eligible for work release. Certain crimes have details which, in and of themselves, are aggravated in nature and inmates so convicted are restricted from consideration for any placement, program, or custody which might afford them unsupervised access to the public. This is such a case. The protection of the public is and remains the primary responsibility of the ADOC and to that end all determinations of classification shall be predicated.

I have violated no right of this offender nor have I defamed him in any manner. His situation and status are of his own creation. I have no authority to remove any information from this offender's file including the PSI from which exhibit A is taken. Unless paroled, inmate Gray will be housed in an appropriate facility commensurate with his offense security needs until his sentence is satisfied 23 November 2046.

Paul Whaley II

STATE OF ALABAMA:
COUNTY OF MONTGOMERY:

SWORN TO AND SUBSCRIBED before me this the 8th day of May, 2006.

Notary Public

## PRESENT OFFENSE(S)

**County, Court, and Case Number**

Lowndes County Circuit Court No. 97-81

**Offense**:

Murder

**Sentence**:

50 years

**Date of Sentence**:

3-12-99

**Details of Offense**:

On 11-18-96 Deputy Rufus Haralson of the Lowndes County Sheriff's Office received a call from the family of Carolyn McMeans Gray reporting that she was missing. Her family was concerned that her husband, Kym Gray, had abducted her. Her family members and local police checked her place of employment and were unable to locate her or the vehicle she had left in that morning on her way to work. Local authorities also checked her residence several times during that day for Ms. Gray or her vehicle.

At approximately 10:15 p.m., Fort Deposit Police Officers were dispatched to a disturbance at Kym Gray's residence. Upon arrival, officers found Carolyn McMeans Gray's family members screaming. Officers searched the residence and found the victim lying in a pool of blood in a bed in a back room. An ambulance, Lowndes County Coroner Winston Pringle, and an investigator were contacted. Mrs. Gray was pronounced dead at 11:50 p.m. An ax or sledge hammer handle covered in what appeared to be blood and hair was found at the scene. It was submitted to Craig Bailey of the Alabama Department of Forensic's Lab. Mrs. Gray's vehicle was found behind a barn at the residence.

Law enforcement officials searched for the suspect, Kym Gray, for three days, at which time he turned himself in to the Lowndes County Sheriff's Department. After being advised of his rights, Gray gave a taped statement to Sheriff Willie Vaughner and Deputy Rufus Haralson of the Lowndes County Sheriff's Department.

2

Gray stated that he had waited by the gate of the victim's mother's house (where she was staying) until she arrived at the gate. Gray then attempted to talk with the victim. When they got into an argument, Gray stated that he hit the victim with a stick that he always carries with him. The stick described by Gray matched the handle found at the crime scene.

Gray was charged with Capital Murder with Count I involving Kidnapping and County II involving Rape/Sodomy. An autopsy revealed the cause of death to be blunt forced injuries to the head. Evidence was found that Mrs. Gray had been sexually assaulted.

It should also be noted that witnesses claimed that Kym Gray had a crack addition and was using crack heavily at the time of this offense.

**Subject's Statement:**

N/A

**Case Status of CoDefendants:**

N/A

**Victim Notification Information:**

Carolyn McMeans Gray, deceased

**Victim Impact:**


**Location of Offense:**

Ft. Deposit, AL

**Court Ordered Restitution:**

$2,924.74

3

## Record of Arrest(s)

### Prior Arrest Record:

| Date | Agency | Charge | Disposition |
|---|---|---|---|
| 2-15-88 | Lowndes County Sheriff's Office | Sexual Assault/Rape II | No billed |
| 5-27-90 | Lowndes County Sheriff's Office | Assault II | No disposition shown |
| 7-3-93 | Lowndes County Sheriff's Office | Menacing | |
| 11-28-93 | Montgomery Police Department | Unauthorized Use of Vehicle | 12-13-93, Nolle prossed |
| 10-14-94 | Montgomery Police Department | Marijuana Possession | 10-26-94, fined $301.00 |

## PERSONAL / SOCIAL HISTORY

### Subject:

Gray, a 30-year-old black male was born on 10-23-68 to Sylvester Gray and Ernest Lee Perdue. Gray is the oldest of 3 children born to Ms. Gray. He was raised in Lowndes County, Alabama.

### Marital Status / History:

Gray was married to the victim in this case, Carolyn McMeans Gray. They had no children together. Gray has on child, Porshia Tolbert, approximately 9 years old. She lives with her mother, Beatrice Tolbert in Michigan.

### Health:

Gray is said to be in good physical health. He is reportedly a positive sickle cell trait carrier, but has had no medical problems. Gray is said to have a crack cocaine addition. He has also used marijuana and alcohol.