IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

| | | |
|---|---|---|
| KYM GRAY, #203 553 | * | |
| Plaintiff, | * | |
| v. | * | 2:06-CV-107-MEF |
| | | (WO) |
| PAUL WHALEY | * | |
| Defendant. | * | |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, Kym Gray ["Gray"] filed this 42 U.S.C. § 1983 action on February 1, 2006 against Paul Whaley II, the Director of Classification for the Alabama Department of Corrections ["ADOC"]. Gray complains that Defendant Whaley placed false information in his prison file and is relying on this false information to deny him the ability be classified to a lesser restricted custody and/or classification level. Gray requests that the false information be expunged from his file. He also seeks $400,000.00 in damages.

Pursuant to the orders of this court, Defendant filed a special report, a supplemental special report, and supporting evidentiary material addressing Gray's claims for relief. *(Doc. Nos. 10, 17.)* The court deems it appropriate to treat these documents as a motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof, and Gray's responses thereto (*Doc. Nos. 13, 18*), the court concludes that the motion for summary judgment should be granted.

## I. BACKGROUND

Gray is serving a 50 year prison term as a result of his conviction for murder. A pre-sentence report regarding the details of Gray's offense reflects the following. On November 18, 1996 Gray bludgeoned his wife to death with the handle of an ax or sledge hammer. Law enforcement officials found the body of Gray's wife lying in a pool of blood in a bed in a back room of Gray's residence. Three days after the murder, Gray turned himself in to the Lowndes County Sheriff's Office where he gave a taped statement admitting that he hit the victim with a stick. Gray was charged in a two count capital murder indictment. Count I involved kidnapping and count II involved rape/sodomy. The autopsy of Gray's wife indicated that the cause of death was blunt force trauma to the head. Evidence also existed that the Gray's wife had been sexually assaulted. (*Doc. No. 10, Exh. A.*)

Due to the nature of Gray's crime, including the details of the offense as supplied by court records made from Gray's criminal proceedings, Defendant Whaley states that, for ADOC classification purposes, Gray is considered a violent criminal offender not a sex offender. Defendant Whaley further affirms that Gray's classification is based upon his conviction for murder and the details related to that crime and not upon any sex act whether alleged or committed. As a result of Gray's conviction for murder and the details of his crime as supplied by court records, Defendant Whaley states that Gray is not eligible for work release and does not meet the criteria for any placement, program, or custody which might allow him unsupervised access to the public. Defendant Whaley further maintains that all

less restrictive placements, programs, and custodies offered by the ADOC are privileges to which no convicted offender has an entitlement of consideration much less participation. (*Doc. No. 10, Whaley Affidavit, Doc. No. 17, Whaley Affidavit*.)

## II.  STANDARD OF REVIEW

To survive the properly supported motion for summary judgment filed by Defendants, Gray is required to produce some evidence which would be admissible at trial supporting his constitutional claims.  Rule 56(e), *Federal Rules of Civil Procedure*.  Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.  *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990).  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing adequate to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).

Where all the evidence before the court which is admissible on its face or which can

be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-1585 (11th Cir. 1996). Summary judgment is, therefore, appropriate when the pleadings, admissible evidentiary materials and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) *Federal Rules of Civil Procedure*; *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Gray has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.

### III.   DISCUSSION

*A. The Custody Classification Claim*

Gray argues that Defendant Whaley is relying on false information to deny him less restrictive custody and/or security levels. (*Doc. No. 1 at 6*.) According to Gray, convicted murderers may achieve a custody status which allows their placement in honor camps and that he is "entitled to classification of lesser restricted institutional placement" per the rules and

regulations of the ADOC. (*Doc. No. 18 at 4-5*.) The court need not decide whether Gray has been classified improperly because, even if his classification is incorrect, his constitutional rights have not been violated.

An inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (failure to place inmate in a lower classification level and/or less restrictive prison environment does not impose an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."). *See also Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Hewitt v. Helms*, 459 U.S. 460 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). Because Gray has no constitutional right to a specific classification and/or security status, correctional officials may change his classification for a good reason, a bad reason, or no reason at all. Thus, the decision to deny Gray a less restrictive classification/custody status and classify him as a violent offender does not violate his constitutional rights. Consequently, the motion for summary judgment with respect to this claim is due to be granted in favor of Defendant Whaley.

B. *The False Information Claim*.

In support of his allegation that false information exists in his inmate file, Gray has attached an affidavit which Defendant Whaley filed in response to a complaint Gray filed in

state court. (*See Doc. No. 1 at Exh. A*.) In this affidavit, Defendant Whaley states that "Gray takes issue with the facts of his crime which indicate that a violent sexual assault occurred before he murdered his victim." (*Id*.) Gray maintains that this comment by Defendant Whaley is false and erroneous inasmuch as he was convicted of murder and that "the record and/or court proceeding does not indicate that [Gray] had raped and/or forced the victim to-wit: Carolyn McMeans Gray to have sex with Gray before her untimely death." (*Doc. No. 18 at 3*) (emphasis in original). Consequently, Gray argues that information exists in his prison file which indicates and/or suggests that he engaged in sexual activity with the victim at the time of the murder, that this information is false and it, therefore, should not be made a part of or contained within his inmate file. Gray complains that Defendant Whaley's placement of and/or reliance on information contained in his prison file which makes reference to a sex act violates his constitutional rights because he was neither charged with nor convicted of any such offense.[1]

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the court considered a *pro se* inmate's complaint in which the inmate argued a deprivation of due process as a result of erroneous information in his prison file which the inmate alleged was used to deny him fair

---

[1] Gray complains that Defendant Whaley's statement that he is a "violent criminal predator" and his reference to Gray's crime as involving a "violent sexual assault," violate his rights against being libeled, slandered, and/or defamed. (*See Doc. No. 1*.) In this § 1983 action, however, such allegations fail to allege a violation of a constitutionally protected right because reputational harm alone is not a right protected by the Constitution. *See Paul v. Davis,* 424 U.S. 693, 712 (1976) (holding that "[t]he interest in reputation . . . is neither 'liberty nor 'property' guaranteed against state deprivation without due process of law"). Gray must also allege an alteration or extinguishment of an interest protected by the Constitution or state law. *Id.* at 708-09

consideration for parole and minimum custody status. Monroe alleged that presentence report information indicating he had raped the victim of his crime was false. The defendants admitted the presentence information was false. Acknowledging that he had no liberty interest in parole, Monroe claimed a due process right to be fairly considered for parole. He contended that the defendants' reliance on admittedly false information in order to deny him parole or minimum security classification violated due process.

The *Monroe* court held that the defendants' reliance on admittedly false information to deny Monroe consideration for parole was arbitrary and capricious treatment violative of the constitution. In *Monroe*, however, the court was careful to distinguish its holding from its prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir. 1982).

> Our holding today does not conflict with our earlier holding in *Slocum, supra*. In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole. *Slocum*, 678 F.2d at 941. The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors. Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information. We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration. *Id.* at 942. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. *Id.* In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender. As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.2d at 1442.

*Slocum* controls the disposition of the instant case. Defendant Whaley does not admit that information contained in Gray's prison file, including the pre-sentence report describing the details of his conviction for murder, is false, incorrect, or erroneous. Rather, Defendant Whaley states that the details of Gray's offense were obtained from court records which he has no authority to change or ignore. Gray's mere contention that the information contained in his prison file is false without evidence of its falsity is insufficient.[2] His assertion of erroneous information does nothing more than raise the possibility that information in his records may be false and this mere possibility fails to provide a basis for relief. *Monroe*, 932 F.2d at 1142. Requiring a trial or hearing every time a prisoner asserted that false information was the basis of prison official's decisions would involve the court in review of a multitude of decisions which traditionally are within the province of prison authorities. *See Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001) (while use of false information in a parole file can be a due process violation, prisoners cannot make a conclusory allegation regarding the use of such information as the basis of a due process claim).

The record in this case establishes that no ***admittedly*** false information appears in

---

[2]Summary judgment is not precluded merely because the inmate disputes the validity of the information. In *Hewitt v. Helms*, 459 U.S. 460 (1983), the Court stated that "prison officials have broad administrative and discretionary authority over the institutions they manage and . . . lawfully incarcerated persons retain only a narrow range of protected liberty interest . . . broad discretionary authority is necessary because the administration of a prison is "at best an extraordinarily difficult undertaking," . . . and . . . to hold . . . that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Id*. at 467.

Gray's prison file and likewise demonstrates that the Defendant Whaley did not rely on ***admittedly*** false information to determine Gray's custody and security classifications nor has he placed any admittedly false information in his inmate file. Consequently, Gray is entitled to no relief as a matter of law and summary judgment on this claim is due to be granted in favor of Defendant Whaley.

*C. The State Law Claims*

Independent of his federal claim, the court understands Gray to seek to invoke the pendent jurisdiction of this court to consider his state tort claims for libel, slander, and/or defamation against Defendant Whaley. In the posture of this case, however, exercise of the court's supplemental jurisdiction would be inappropriate.

For a federal court to exercise pendent or supplemental jurisdiction over state law claims, "the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a 'common nucleus of operative fact.'" *L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414 (11th Cir. 1984) (quoting *Jackson v. Stinchcomb*, 635 F.2d 462, 470 (5th Cir. 1981), quoting *United Mine Workers v. Gibb*, 383 U.S. 715, 725 (1966)). The exercise of this jurisdiction is discretionary. *United Mine Workers*, 383 U.S. at 726. "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428. In view of the court's resolution of the federal claim presented in the complaint, Gray's pendent state law claims are due to be dismissed. *Gibbs,* 383 U.S. at 726 ("[I]f the federal claims are dismissed

9

prior to trial . . . the state claims should be dismissed as well."); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendant Whaley's motion for summary judgment, as supplemented (*Doc. No. 10*), be GRANTED as to all federal claims and those claims be DISMISSED with prejudice;

2. The court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and those claims be DISMISSED without prejudice;

3. Judgment be ENTERED in favor of Defendant Whaley and against Plaintiff on the federal claims; and

4. The costs of this proceeding be taxed against Plaintiff for which execution may issue.

It is further

ORDERED that on or before October 29, 2007 the parties are DIRECTED to file any objections to the said Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the

Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 16th day of October 2007.

/s/   Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE